In re GREENBACK et al.
GREENBACK v. DIXON.

No. 35099.   June 24, 1952.

Rehearing Denied July 29, 1952.

*246 P. 2d 733.*

Smith & Smith, Miami, for plaintiff in error.

Robert E. Nesbitt, Frank Nesbitt, and Nelle Nesbit, Miami, for defendant in error.

JOHNSON, J. This appeal stems from the following fact situation, to-wit:

On October 28, 1943, Maggie White filed a petition in the county court (sitting as a juvenile court) of Ottawa county, Oklahoma, alleging herself to be a reputable citizen of Ottawa county, having personal knowledge of the neglected condition of Martha Ann Greenback and Mary Louise Greenback, minors and residents of said county; that Martha Ann was five years old; and Mary Louise was three years old; that their mother was Audrey Greenback and that the children are now in their mother's custody; that said minors are neglected children within the meaning of the provisions of Title 10, §101, Okla. Statutes Ann., in that they do not have proper parental care, and their home, by reason of neglect, cruelty and depravity of their mother, is an unfit place for them. Also numerous other allegations were made tending to show the unfitness of the mother to have the care and custody of the children.

The trial was before the county judge, sitting as judge of the juvenile court, and in accord with the proof, allegations and the finding of facts, it was (omitting the formal parts) adjudged and decreed:

"It Is Therefore Adjudged and Decreed that Martha Ann Greenback and Mary Louise Greenback are 'neglected children,' and that their mother, Audrey Greenback be, and she hereby is deprived of the custody of said minor children.

"It Is Further Adjudged and Decreed that the care of said Martha Ann Greenback and Mary Louise Greenback, minor neglected children aforesaid, be and the same hereby is committed to Grace Dixon of Miami, Oklahoma, with the specific provision that said children shall not be removed from the city of Miami, Oklahoma, or their place of residence changed therefrom. It is further ordered that said Grace Dixon shall not be the guardian of either the person or estate of said minor children, nor shall said minor children be the wards of the said Grace Dixon within the meaning of the provisions of Tit. 10, Sec. 110, Okla. Stats. Ann. and that said children shall remain in the care of said Grace Dixon until the further orders of this court.

"/s/ John H. Venable
"County Judge Sitting as
"Judge of the Juvenile Court"

Grace Dixon has had the care and custody of the children since the above order was made.

Thereafter, on the 5th day of November, 1950, Audrey Greenback, now Newman, filed a verified application to vacate the above order. Omitting the formal parts, the application reads:

"Application to Vacate Decree and Order of the Court.

"And now comes Audrey Newman, formerly Greenback, mother of the minor children, Martha Ann Greenback and Mary Louise Greenback, and respectfully moves the Court to vacate, rescind and set aside that order of this Court, made and entered on November 3, 1943, in and by which said order the temporary custody of said named minors was reposed in one Grace Dixon, and to restore to the custody of the movant herein said named children.

"Your petitioner respectfully shows the Court that she is now possessed in

her own right of a home in the City of Miami, Oklahoma; that she has sufficient income to support herself and to properly care for said children; that said children's movant is now a woman of good repute, of good habits and is able to furnish a proper home, with proper environments, to her said children; that she will willingly do so.

"Your petitioner further shows the Court that her said children are not permitted to visit with her, their mother; that their affection is being intentionally alienated from this petitioner; that said children are now being improperly reared.

"Wherefore, said petitioner prays that the order aforesaid be rescinded and that said children be restored to petitioner's custody.

"/s/ Audrey Newman"

Grace Dixon, respondent, demurred thereto. The pertinent part thereof reads:

"Demurrer

"Comes now Grace Dixon the respondent herein and demurs to the application and petition of the movant herein filed and as reason therefor says that same does not state facts sufficient to entitle the petitioner for the relief sought in her application or petition or to any relief whatever, and the same does not state facts sufficient to show that said children are dependent or neglected children in the custody of said Grace Dixon."

The court sustained this demurrer resulting in this appeal.

Audrey Greenback, now Newman, contends that the trial court erred in sustaining a demurrer to her application to vacate the order for the reason that the order of November 3, 1943, which recited "and that said children shall remain in the care of said Grace Dixon until the further orders of this Court" constituted a temporary order and also that the juvenile court's jurisdiction is a continuing jurisdiction and that such order may be modified at any time after it was made.

Grace Dixon contends that the order of November 3, 1943, was a final order,

and where no appeal was taken therefrom, the jurisdiction of the court was exhausted upon the expiration of six months period to reverse, vacate or modify the judgment as provided by Title 12, §972, O.S. 1951.

It is true that the time for an appeal from the order finding the children to be neglected and granting the custody of the children to Grace Dixon had expired at the time Audrey Greenback, now Newman, filed her application to have the custody of her children restored to her, but the county court, we think, under its authority derived from the statutes, Title 10, §§101-114, O.S. 1951, and in view of our liberal rule of construction of pleadings when attacked by a demurrer, had jurisdiction to consider the mother's application or petition asking for an order granting her the custody of her children. Her application was sufficient to invoke the jurisdiction of the court and withstand the demurrer. In it she alleged that since the former order her circumstances had changed and that she had reformed and was now a fit and proper person with a home for her children and that she was morally and financially able and willing to provide and care for them; that they were not being properly cared for by their present custodian, etc.

This application makes no complaint as to the original order finding the children neglected and placing them in Grace Dixon's custody. It is not to review or reverse the former order but is to procure a new judgment on a new state of facts. McFall v. Simmons, Judge, 12 S.D. 562, 81 N.W. 898.

It is urged by respondent that the Act (Title 10, O.S. 1951, §§101-114) made no provision for the continuing jurisdiction of the court except in delinquency cases. Section 101 of the Act defines "dependent child", "neglected child" and "delinquent child." Section 114 provides:

"This Article (Title 10, Sections 101-114, O. S. 1951) shall be liberally construed, to the end that its purpose may

be carried out, towit: That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents. * * *"

See Ex parte Lewis, 85 Okla. Cr. 322, 188 P. 2d 367, wherein it was held that the Juvenile Court Act should be liberally construed so as to effect its humanitarian objects. The article composing the Juvenile Court Act does not specifically or expressly provide for a minimum cessation or duration of the wardship, or for further or other proceedings except as to delinquent children as in section 112. However, the article does not expressly prohibit further proceedings in cases involving dependent and neglected children and a reasonable liberal construction of the entire article would so provide where necessary to properly safeguard a child's best interests and welfare. In 43 C.J.S. Infants, §8, it is said:

"It is the trial court's duty to ascertain all the facts and to make such investigation as in its judgment will assist in reaching a proper conclusion as to the person who is best qualified to furnish a proper environment and home for the child. * * * The Court should make such orders as to the infant's custody as will properly safeguard its best interests and welfare. An order awarding the custody of a child merely adjudicates the rights of the parties on the question of which party should have the custody, and is not res judicata with respect to future acts and conditions. Furthermore, the court cannot establish permanent custody of the infant, and thereby assume to foreclose future judicial consideration of action in the premises; any order or decree affecting his custody is subject to future control and modification by the Court, as subsequent conditions and circumstances may require for his welfare, but an order decreeing custody may not be changed or modified unless an adequate cause therefor arises from changed conditions."

This wholesome rule, we think, is applicable to the proceedings of our county courts when performing the duties of a juvenile judge.

Ordinarily, the court may change or modify its order at any time. 43 C.J.S., Infants, §100, Ex parte Woodworth, 92 Okla. Cr. 235, 222 P. 2d 528; State v. Hartford Accident & Indemnity Co., 154 Kan. 79, 114 P. 2d 812; In re Houser, 166 Kan. 48, 199 P. 2d 499; New Mexico Dept. of Public Welfare v. Cromer, 52 N.M. 331, 197 P. 2d 902.

In 43 C.J.S., Infants, §100, subd. b, Period of Detention, page 261, it is stated:

"An adjudication committing a child because of neglect or failure of the parent to provide for it does not deprive the parent of his right to the custody of the child if he subsequently becomes competent and willing to care for it properly, and in such case the court, in the exercise of its * * * equitable power, may restore the child to the custody of its parent, even though he had notice of, and appeared in, the proceeding for commitment, and no appeal has been taken from the order of commitment and the time for appealing has expired, and although the institution does not consent to the child's discharge. In determining whether custody of the child should be returned to the parents, the physical and moral welfare of the child is the paramount question, and restoration may be refused where it would not be to the child's benefit. * * *" (See cases under footnotes of this section.)

From the rules herein announced, which have been tested and tried through the years, and from a study of comparative law, it is seen that these precedential rules follow substantially the same pattern in the various systems of jurisprudence, and, unless expressly supplanted by statutory enactments, or prevented by statutory inhibitions, we are constrained to apply them in cases concerning infants involving such circumstances as in the instant case.

The judgment of the trial court is reversed and remanded with direction to reinstate the cause, overrule the demurrer and set the cause down for further proceedings consistent with the views herein expressed.

34

HALLEY, V. C. J., and WELCH, DAVISON, and O'NEAL, JJ., concur.